UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DAWN RENEE E.,[1] <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>ANDREW SAUL, <br>Commissioner of Social Security, <br><br>　　　　Defendant. | Case No. 8:20-cv-00581-JDE <br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Dawn Renee E. ("Plaintiff") filed a Complaint on March 23, 2020, seeking review of the Commissioner's denial of her application for supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on February 3, 2021. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# BACKGROUND

Plaintiff initially filed for SSI on August 6, 2004, alleging disability commencing April 1, 1991. AR 53, 68, 173-74. At the initial level of review, she was granted SSI on December 22, 2004. AR 53, 68, 174. Plaintiff was later incarcerated in the Orange County Jail and then two women's institutions from August 2014 until July 2016. AR 229-30. She was treated for mental disorders during her incarceration, and on parole. AR 229-30, 333-47. Shortly after release, on July 28, 2016, she re-filed for SSI, again alleging the April 1, 1991 disability onset date. AR 18, 36, 38, 149-57. On November 15, 2018, after her application was denied initially and upon reconsideration (AR 66, 80), Plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ"), as did a vocational expert ("VE"). AR 36-51.

On January 28, 2019, the ALJ found Plaintiff was not disabled. AR 18-28. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date and had severe impairments of deep vein thrombosis, right knee strain, chronic obstructive pulmonary disease, schizoaffective disorder, and bipolar disorder. AR 20-21. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 21-23), and she had the residual functional capacity ("RFC") to perform light work[2] except she could (AR 36):

---

[2] "Light work" is defined as
lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

>Occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds. Stand and walk with normal breaks for a total of 6 hours of an 8-hour workday. Sit with normal breaks for a total of 6 hours of an 8-hour workday. Occasionally balance, stoop, kneel, crouch, and climb. No crawling, climbing ladders, ropes, or scaffolds. No unprotected heights, dangerous moving machinery, or operating a motor vehicle. No concentrated exposure to humidity, wetness, dusts, odors, fumes, pulmonary irritants, or extremes in cold and heat. Limited to unskilled work, simple tasks, and only occasional interaction with coworkers, supervisors, and general public.

The ALJ next found that Plaintiff has no past relevant work. AR 26. The ALJ found that Plaintiff, at 49 years old on the application date, was defined as a "younger individual," but that she subsequently changed age category to "closely approaching advanced age." AR 27. The ALJ also found that she has at least a high school education and is able to communicate in English. AR 27.

The ALJ next found that, if Plaintiff had the RFC to perform a full range of light work, a Medical-Vocational rule would direct a finding of "not disabled." AR 27. However, because Plaintiff's ability to perform all or substantially all the requirements of light work has been impeded by additional limitations, the ALJ consulted the testimony of the VE. AR 27. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including: assembler of small products (Dictionary of Occupational Titles ("DOT") 706.684-022), packer, (DOT 920.687-166) and mail clerk (DOT 209.687-026). AR 28. Thus, the ALJ concluded Plaintiff was not under a "disability," as defined in the SSA, since

---

20 C.F.R. § 416.967(b); see also Aide R. v. Saul, 2020 WL 7773896, at *2 n.6 (C.D. Cal. Dec. 30, 2020).

her application was filed. AR 28.[3]

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the agency's final decision. AR 1-7.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the

---

[3] The ALJ did not discuss the prior disability determination, and neither the decision, nor the Joint Stipulation, indicate whether a presumption of continuing disability attached to it. Underlying documentation indicates the Administration found that presumptive disability was not appropriate for Plaintiff's claim. See, e.g., AR 53. It appears Plaintiff's benefits were suspended under the regulations upon her incarceration, and after 12 months of continuous suspension, they were terminated. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1172 (9th Cir. 2008).

court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B.      The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past

relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show she is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present five disputed issues[4] and accompanying sub-issues (Jt. Stip. at 7-48), reordered as:

Issue No. 1: Did the ALJ improperly ignore or discredit:

(a) the treating physician evidence of Dr. Chau Ton-That and Dr. Mary Poonen,

(b) case manager Susan Gondos's testimony, and

(c) Plaintiff's testimony about her subjective complaints;

---

[4] Plaintiff presents her requested remedy as a sixth issue. Jt. Stip. at 48-51.

Issue No. 2: Did the ALJ fail to develop the record by failing to:

    (a) develop and evaluate an earlier period of records during Plaintiff's incarceration,

    (b) obtain updated consultative examinations, and

    (c) obtain an opinion from a medical expert ("ME");

Issue No. 3: Did the ALJ err by failing to provide a consultative examiner ("CE") Plaintiff's medical records;

Issue No. 4: Did the ALJ mischaracterize and/or ignore evidence of record; and

Issue No 5: Did the ALJ err in assessing Plaintiff's RFC by:

    (a) failing to account for functional limitations,

    (b) properly account for Plaintiff's age, and

    (c) relying on a hypothetical to the VE that did not incorporate Plaintiff's limitations.

**A.    Consideration of Treating Physician Evidence.**

In Issue No. 1, Plaintiff contends the ALJ improperly ignored Dr. Ton-That's treating physician evidence and improperly ignored or discredited the treating physician evidence of Dr. Poonen. Jt. Stip. at 22-25, 35-37.[5]

    1.  Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the

---

[5] Plaintiff raises aspects of these challenges in some of the other disputed issues.

7

plaintiff, and those who did neither. See 20 C.F.R. § 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830.

When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Ford, 950 F.3d at 1154. Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is accompanied by adequate explanation, the nature and extent of the treatment relationship, and consistency with the record as a whole, among other things. 20 C.F.R. § 416.927(c).

"The regulations do not prescribe a fixed time period for when evidence is considered no longer relevant." Amanda Simone M. v. Comm'r Soc. Sec., 2020 WL 1450428, at *4 (E.D. Wash. Mar. 25, 2020). Although SSI benefits are not payable until one month after the date on which an application is filed, the regulations indicate that the Agency will develop a complete medical history of a claimant "for at least the 12 months preceding the month in which you file your application unless there is reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application." See 20 C.F.R. §§ 416.335, 416.501, 416.912(b); see also Vivianlynne Q. v. Comm'r Soc. Sec., 2020 WL

4746228, *5 (W.D. Wash. Aug. 17, 2020) (medical opinions rendered outside the period at issue can have probative value in ascertaining a claimant's RFC after her alleged onset date).

2. Analysis

    i.    Dr. Ton-That

On May 2, 2013, Dr. Ton-That completed a complete psychiatric evaluation of Plaintiff. AR 817-19. He provided a detailed summary of her psychiatric history, including depressive, episodic symptoms that developed since she was 25 years old, mood elevation since she was 30, and numerous hospitalizations[6] for her psychiatric condition. AR 817. Dr. Ton-That estimated her severity as "moderate." AR 817. He explained her mental status, including noting that signs of depression and depressed mood were present. AR 818. He diagnosed her with "Bipolar 1, Most Recent Episode Depressed Moderate" along with hypothyroidism. AR 818. Dr. Ton-That prescribed medications of hydroxyzine pamoate, olanzapine, and sertraline to treat her mental health. AR 818.[7]

Thereafter, Dr. Ton-That treated Plaintiff monthly for at least a year. AR 820-45. While treatment notes reflect some improvement, they also indicated that her condition was "episodically present," at times worsening, and described her varyingly as wary, tense, "unhappy," appearing with a depressed mood, "minimally communicative," disheveled, and anxious. 830, 832, 836, 838, 840, 842, 844. For most of the treatment period, he treated her with the same psychotropic medications that he started at the first encounter, and later

---

[6] By July 2014, Plaintiff had at least 10 hospitalizations for her condition. AR 346, 450.

[7] At the time of the November 2018 hearing, Plaintiff was still taking hydroxyzine pamoate (Vistaril) and sertraline (Zoloft), and additionally ziprasidone (Geodon) and aripiprazole (Abilify), for her mental condition. AR 42-43.

added lurasidone and quetiapine. AR 833, 839, 841. Toward the end of Dr. Ton-That's treatment in June 2014, he documented Plaintiff's three-day stay at the University of California - Irvine Healthcare ("UCI") "due to hearing voices episodes" and upon examination stated that "[p]sychotic or borderline psychotic process appear[ed] to be present." AR 844; see also AR 761. He also added "Schizoaffective Disorder, Bipolar Type" as a diagnosis. AR 844.

Finally, throughout the treatment period, the doctor consistently opined that Plaintiff was "unable to work." AR 820, 822, 824, 826, 828, 830, 832, 834, 836, 838, 840, 842, 844.

Having carefully reviewed the record, the Court agrees with Plaintiff that the ALJ erred by failing to provide any discussion of Dr. Ton-That's evaluation, treatment notes, or opinion that she could not work. Although an ALJ need not discuss everything in the medical record, an ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected. See Robbins, 466 F.3d at 883; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (the ALJ must discuss significant and probative evidence and explain why it was rejected); Alvarez v. Astrue, 2012 WL 282110, at *3 (C.D. Cal. Jan. 26, 2012) ("If the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted."). The failure to discuss or even mention Dr. Ton-That's medical opinion evidence, let alone provide any reason for discounting it, was error. See Garrison, 759 F.3d at 1012-13 ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it"); Lester, 81 F.3d at 832-33 ("The Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments[;]" failing to do so is error).

Defendant postulates three arguments why Plaintiff's claim fails: (1) there was no medical opinion from Dr. Ton-That concerning Plaintiff's ability

to work (Jt. Stip. at 26, 28); (2) the record as a whole demonstrates Plaintiff's mental status-findings were unremarkable (Jt. Stip. at 28); and (3) his treatment notes were of limited relevance because they predated her application by two years or more (Jt. Stip. at 28). Because the ALJ ignored Dr. Ton-That entirely, the Court cannot rely on those reasons to discount him. See Garrison, 759 F.3d at 1010 (district court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (the court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." (citation omitted)).

However, even were the Court to consider the proffered reasons, they are insufficient. First, as noted above, Dr. Ton-That repeatedly opined that Plaintiff could not work as late as June 2014. AR 820, 822, 824, 826, 828, 830, 832, 834, 836, 838, 840, 842, 844. That his opinion was found within his progress notes is immaterial. See Marsh v. Colvin, 792 F.3d 1170, 1172 & n.1 (9th Cir. 2015) (rejecting Commissioner's argument that doctor's clinical progress notes were not a "medical opinion," and finding ALJ prejudicially erred by not mentioning them in the written decision).

Second, although the Commissioner has summarized some of the unremarkable findings in Dr. Ton-That's treatment notes, he ignores other evidence noted above. It is well settled that it is the ALJ's duty to weigh that medical evidence, and the Court declines to so in the first instance. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (it is ALJ's obligation to analyze and weigh the evidence, whereas the Court is charged with reviewing ALJ's decision to determine whether it is supported by substantial evidence and is free from legal error); Lambert v. Saul, 980 F.3d 1266, 1277 (2020) ("the ALJ must provide sufficient reasoning that allows us to perform our own review, because the grounds upon which an administrative order

must be judged are those upon which the record discloses that its action was based") (internal quotation marks and citations omitted).

      Third, and finally, the timing of Dr. Ton-That's opinion and notes is not a persuasive reason for ignoring them. Defendant correctly notes that Plaintiff protectively re-filed her application for SSI in July 2016, and that SSI benefits would not have been payable until one month later. Jt. Stip. at 13, 28; AR 18, 36, 38, 149; see 20 C.F.R. §§ 416.335, 416.501. From that, Defendant argues Dr. Ton-That's treatment notes, which predated Plaintiff's application date by two years or more, were of little relevance. Jt. Stip. at 28. However, as mentioned, regulations provide that the Agency will consider Plaintiff's complete medical history "at least" 12 months before the application was filed, and even earlier if there is reason to believe that development of an earlier period is necessary. See 20 C.F.R. § 416.912(b) (emphasis added). Here, there was ample reason not to ignore the doctor's medical evidence considering Plaintiff alleged disability beginning April of 1991 and was previously found disabled. AR 18, 36, 38, 149. Dr. Ton-That's evaluation, treatment notes, and opinion were in the record, well within the relevant period, and near the period the Agency should "at least" consider. Accordingly, they should have been considered and addressed in the decision. See e.g., Dervin v. Astrue, 407 F. App'x 154, 155-56 (9th Cir. 2010) (in cases of chronic mental impairment, the ALJ is required to gather all records of past treatment, and account for previous determinations that claimant suffered from a mental disorder and was unable to work); Jay S. v. Comm'r Soc. Sec., 2020 WL 5231025, *2 (W.D. Wash. Sept. 2, 2020) ("[a]lthough SSI payments may not be paid for periods earlier than the application date, this does not render the alleged onset date irrelevant when charting the history and severity of plaintiff's functional limitations"); Vivianlynne Q., 2020 WL 4746228 at *5; Melinda M. v. Saul, 2020 WL 4194987, *5 (E.D. Wash. July 20, 2020) ("limiting the review of the

evidence to the date of application and forward, thereby ignoring the claimant's alleged onset date of disability, is inconsistent with the Regulations and internal agency policy"); Joseph H. v. Saul, 2020 WL 1557297, *3 (E.D. Wash. Apr. 1, 2020) (ALJ erred by giving no weight to 2015 exam that predated the application because the exam nonetheless occurred after the 1990 alleged onset date); Michael G. C. v. Comm'r Soc. Sec., 2019 WL 6907790, *2 (W.D. Wash. Dec. 19, 2019) ("Although the Social Security Administration is only required to include medical sources for the 12 months preceding the application date in the record, the ALJ is required to evaluate all medical opinions actually included in the record.").

Finally, this error is not harmless. The harmless error analysis may be applied where even a treating source's opinion is disregarded without comment. See Marsh, 792 F.3d at 1173. An error is harmful unless the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006). Here, Dr. Ton-That was Plaintiff's treating physician, and he appears to be the only medical source of record to opine Plaintiff was unable to work. The Court cannot confidently conclude that Dr. Ton-That's consistent, repeated statements that Plaintiff could not work during the relevant period would not have made a difference in the decision. Id.; Molina, 674 F.3d at 1115; see also Rebecca W. v. Saul, 2019 WL 7819669, at *13 (E.D. Wash. Aug. 19, 2019) (error in disregarding treating source without comment harmful where it was only medical source that opined claimant had physical limitations that restricted her ability to use her arm for repetitive work); Janice M. v. Comm'r Soc. Sec. Admin., 2018 WL 7142180, at *5 (D. Or. Oct. 16, 2018) (opinions of consulting physicians cannot justify failure to address examining physician).

      ii.  Dr. Poonen

While on parole, Plaintiff was treated by Dr. Poonen, a psychiatrist, on a near monthly basis from her initial "[c]risis [i]ntervention" in July 2016, at least until October 16, 2018. AR 333-337. Dr. Poonen administered Plaintiff psychotropic medication, changed medication to accommodate her developing condition, discussed her diagnosis, evaluated her mental health, and completed notes of her treatment. See, e.g., AR 337-45.

In the decision, the ALJ refers to five progress notes "from the California Department of Corrections" ("CDC") ranging from April 18, 2017, to May 15, 2018, and provides a brief summary of the most positive findings. AR 25-26.[8] The ALJ then stated that the medical record indicated Plaintiff's symptoms were being treated and stabilized and that there was little additional evidence to support a greater RFC. AR 26. The ALJ concluded with a blanket statement that the limitations set forth in the decision "give generous consideration" to Plaintiff's history of schizoaffective and bipolar disorder. AR 26.

After review of the record, the Court agrees with Plaintiff that this is insufficient to discount Dr. Poonen's treatment evidence.

First, the ALJ does not mention or acknowledge Dr. Poonen as a treating source, examine whether any of the progress notes constitute an opinion, or assign any relevant weight to Dr. Poonen or her findings. As noted, although an ALJ need not discuss everything in the medical record, an ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected. See Robbins, 466 F.3d at

---

[8] Earlier in the decision, at Step Two, it appears the ALJ also relied on the CDC records in determining Plaintiff's "paragraph B" criteria. AR 21-22. That is not entirely clear, however, as at one point the ALJ discusses the psychiatric consultative examination but the citation (Exhibit 8F/3-6) corresponds to the CDC list of appointments Plaintiff had while on parole, not the examination. See AR 22, 334-37.

883; Garrison, 759 F.3d at 1012-13; Lester, 81 F.3d at 832-33; Vincent, 739 F.2d at 1395; see also Marsh, 792 F.3d at 1173 ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes").

Second, although the ALJ mentioned certain records and cited some by exhibit page number, it is unclear which findings the ALJ intended to refer to, and by which medical provider. AR 25-26. The records are interspersed with detailed findings from at least four clinical social workers, M. Gupta, A. Kohi, M. Maciel, and S. Sairsingh, along with Dr. Poonen's findings. AR 333-45. Due to the combined nature of the treatment records, it is impossible to determine which findings the ALJ was attempting to address, and by whom those findings were made. Without an indication of the provider by name, it not possible to meaningfully review the ALJ's discussion of the CDC records as they pertain to Dr. Poonen. See Lambert, 980 F.3d at 1277; Brown-Hunter, 806 F.3d at 492 (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

Third, the CDC records also contain a psychiatric evaluation of Plaintiff upon her admission and treatment for crisis intervention. AR 345-47. It is unclear whether the evaluation was done by Dr. Poonen or a clinical social worker under her supervision, but the ALJ's decision makes no mention of it and does not indicate it was considered. As this evaluation discusses significant effects of Plaintiff's symptoms that are attributable to her condition, and it is relevant in understanding Plaintiff's treatment with Dr. Poonen going forward, it should have been discussed. See Robbins, 466 F.3d at 883; Garrison, 759 F.3d at 1012-13; Lester, 81 F.3d at 832-33; Vincent, 739 F.2d at 1395.

Finally, because the ALJ failed to mention Dr. Poonen or adequately discuss the CDC records in a way such that the Court could meaningfully assess prejudice, the Court cannot conclude the error was harmless. See Brown-Hunter, 806 F.3d at 492 (if ALJ fails to specify reasoning, reviewing court will be unable to meaningfully review without substituting its conclusion for the ALJ's, or speculating as to grounds for the ALJ's conclusions; in such a situation, "such error will usually not be harmless"); Marsh, 792 F.3d at 1173 (remanding where ALJ did not mention treating doctor's findings in clinical progress notes because court could not "confidently conclude" the error was harmless).

As a result, the Court finds the ALJ erred in failing to provide legally sufficient reasons for discounting the evidence of the treating physicians set forth above and finds the errors were not harmless.

**B.     Remand is appropriate.**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where further proceedings would serve no useful purpose or where the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes remand for further proceedings is warranted. Plaintiff's challenge to the treating physician evidence is repeated under different legal theories in the Joint Stipulation, the assessment of that evidence

affects other interrelated issues raised, and Plaintiff alleges the record is not fully developed.[9] See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); see also Vaughn v. Berryhill, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing of exhaustive analysis of plaintiff's remaining issues because "[t]he ALJ's . . . evaluations of [p]laintiff's [testimony] . . . are inescapably linked to conclusions regarding the medical evidence"). Because it is unclear, considering these issues, whether Plaintiff was in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

Accordingly, on remand, the ALJ shall reassess the treating physician evidence and, if warranted upon such reassessment, reassess the medical and other source opinions in conjunction with Plaintiff's subjective complaints, reassess Plaintiff's RFC if appropriate, and proceed through the remaining steps of the disability analysis if warranted to determine whether Plaintiff could still perform her past work, or what other jobs if any, Plaintiff was capable of performing that existed in significant numbers.

---

[9] The Court also notes that it appears a different claimant's records were inadvertently filed here in place of a portion of Plaintiff's records. Dkt. 16-11. The omitted records pertain to Plaintiff's hospitalizations at UCI (Dkt. 16-2 at 2). Given the Court's ruling, the omitted records are unnecessary to resolve this case.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: February 19, 2021

_____
JOHN D. EARLY
United States Magistrate Judge